**6**
**JASON BLUMBERG, NY State Bar No. 4055257**
Trial Attorney
ANTONIA G. DARLING, State Bar No. 76190
Assistant United States Trustee
**UNITED STATES DEPARTMENT OF JUSTICE**
Office of the United States Trustee
501 "I" Street, Suite 7-500
Sacramento, CA 95814-2322
(916) 930-2100 / Fax (916) 930-2099
Antonia.Darling@usdoj.gov
Jason.blumberg@usdoj.gov

Attorneys for the United States Trustee,
Region 17, Tracy Hope Davis

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | Case No. 17-20731-D-11 |
| | DC No.: UST-1 |
| CS360 TOWERS, LLC, | |
| | Date: March 29, 2017 |
| | Time: 10:00 a.m. |
| | Dept.: D |
| Debtor. | Courtroom: 34 |
| _____/ | |

**DECLARATION OF CARLA K. CORDERO**

I, Carla K. Cordero, declare as follows:

1. I am employed as a Bankruptcy Auditor for the United States Department of Justice, Office of the United States Trustee, Region 17, Sacramento Division (the "**UST**").

2. I am submitting this declaration in connection with the UST's motion for an order directing the appointment of a Chapter 11 Trustee (filed herewith) (the "**Motion**").

1

3. On March 10, 2017, I attended the meeting of creditors in this case (the "**341 Meeting**"). Jason Blumberg, a trial attorney for the UST, conducted the 341 Meeting.

4. Mark Chisick appeared and testified at the 341 Meeting on behalf of the Debtor. The Debtor's counsel (Stephan Brown) also appeared at the 341 Meeting.

5. During the 341 Meeting, Mr. Chisick testified that he has been a managing member of the Debtor since its inception in 2011.

6. Mr. Chisick further testified that the Debtor owns approximately 40 units at "Bridgeway Towers," which is located at 500 "N" Street. Nine units are commercial units (the "**Commercial Units**"), and the remaining units are residential units.

7. Mr. Chisck further testified that 20% of the interests in the Debtor are owned by Ray Sahadeo; 20% of the interests are owned by the Chisick Family Trust; and 60% of the interests are owned by Gemack Associates.

8. Mr. Chisck further testified that he is a trustee of the Chisick Family Trust. Gemack Associates is owned by Brian Chisick. Brian Chisick is the father of Mark Chisick.

9. Mr. Chisck further testified that Mr. Sahadeo had been the other managing member of the Debtor, but he was removed from this position under the terms of the operating agreement. Mr. Sahaedo has not vacated the Debtor's main office suite. Mr. Chisick and the Debtor's counsel acknowledged that Mr. Sahadeo (through his counsel) disputes his removal as a manager of the Debtor.

10. Mr. Chisck further testified that the removal of Mr. Sahadeo as a manager related to Mr. Sahadeo's alleged diversion of rents belonging to the Debtor.

11. When asked who is handling the day-to-day affairs of the Debtor, Mr. Chisick testified that he "suppose[d] its Ray Sahadeo, but I don't know." Mr. Chisick further testified that he is not handling the day-to-day affairs of the Debtor.

12. Mr. Chisick further testified that he had sole signing authority for the Debtor's operating account at Wells Fargo since the account's inception in approximately 2011. Mr. Chisick had sole signing authority for the Wells Fargo accounts listed on Schedule A/B.

13. Mr. Chisick further testified that the Debtor's property manager is an entity called "HomePointe." HomePointe is holding approximately $150,000 of the Debtor's rents. HomePointe is refusing to release these funds due, in part, to the dispute between Mr. Chisick and Mr. Sahadeo.

14. Mr. Chisick further testified that Brent Lucien also collected rents owed to the Debtor. Mr. Lucien reports to Mr. Sahadeo.

15. Mr. Chisick further testified that he does not know whether the rents for March have been collected. The rents for March are currently due.

16. Mr. Chisick further testified that "four to five" of the Commercial Units are controlled by Mr. Sahadeo or "his people." When asked whether the Debtor is receiving any rent for the Commercial Units, Mr. Chisick testified that "we" received a check for $500 "one time … probably a year ago."

17. Mr. Chisick further testified that the Debtor's books and records are not of sufficient quality to allow the Debtor to conclusively determine to whom it owes money. When asked why the books and records are deficient, Mr. Chisick testified that neither he nor Mr. Sahadeo were "paying enough attention."


18. Mr. Chisick further testified that the Debtor "almost" has liability insurance, as documents had recently been sent to an insurance company to bind coverage. The Debtor's counsel acknowledged that the policy was not in effect.

19. Mr. Chisick testified that he did not know whether the Debtor had liability insurance six months ago. Mr. Chisick acknowledged that any payments for liability insurance would have come from an account for which he had sole signing authority.

20. Mr. Chisick further testified that the Homeowners Association provides fire insurance protection for the exterior of the building. However, Mr. Chisick acknowledged that he did not have any documentation to substantiate this contention.

21. Mr. Chisick further testified that Mr. Sahadeo had "always" recommended that the Debtor's property taxes not be paid. Mr. Chisick further testified that he accepted this recommendation even though he was the sole signatory of the Debtor's account.

22. Mr. Chisick further testified that he was aware for a "couple of years" that Mr. Sahadeo's friends and associates occupied the Debtor's units without paying rent to the Debtor. While Mr. Chisick testified that he spoke to Mr. Sahadeo about this agreement, he testified that he took no further action until filing a lawsuit in November.

23. Mr. Chisick further testified that he had authorized direct payments from the Debtor to Arthur Williams. Mr. Chisick testified that he did not have an understanding of the basis of Mr. Williams's claim at the time the payments were made. Mr. Chisick further testified that Arthur Williams is the grandfather of Chris Williams, who is Ray Sahadeo's "right-hand man."

24. Mr. Chisick further testified that Arthur Williams was also paid funds through escrow in connection with a sale of a unit owned by the Debtor. Mr. Chisick testified that he was "sure" that he had signed the escrow instructions.

25. Mr. Chisick further testified that Mr. Sahaedo led him to believe that Mr. Williams was a creditor of the Debtor. Mr. Chisick further testified that he now does not believe that Mr. Williams is a creditor. Mr. Chisick further testified that he did not believe that Mr. Williams made loans directly to the Debtor.

26. Mr. Chisick further testified that he owns 50% of CS360 Rentals, LLC. The remaining 50% is owned by Mr. Sahadeo. When asked about the payments to CS360 Rentals, LLC on question 4.6 of the Statement of Financial Affairs, Mr. Chisick testified that he didn't remember what the payments were for. When asked whether he had authorized the payments, Mr. Chisick testified that "I suppose I did."

27. Mr. Chisick further testified that he owns 50% of S360 Holdings, LLC. The remaining 50% is owned by Mr. Sahadeo. Mr. Chisick testified that he believes that the Debtor owes money to S360 Holdings, LLC.

28. Mr. Chisick further testified that he owns 50% of S360 Properties, LLC. The remaining 50% is owned by Mr. Sahadeo. Mr. Chisick testified that he was not sure whether the Debtor owes money to S360 Properties, LLC.

29. Mr. Chisick further testified that he believed that he signed the buy-back agreement with Mr. Eldridge on the Debtor's behalf. The Debtor transferred title pursuant to this agreement. The option to reacquire title expired in the "latter part of last year."

I declare under penalty of perjury that the foregoing is true and correct and is of my own personal knowledge and if called to do so, I would testify to same.

Executed in Lincoln, California, on March 13, 2017.

*Carla K. Cordero*

**CARLA K. CORDERO**